1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

11

TERESA S. TITUS, also known as
TRACY TITUS,

CASE NO. 3:15-cv-05690-RJB

12

Plaintiff,

ORDER ON WELLS FARGO,
FANNIE MAE, AND MERS'
MOTION TO DISMISS

13

v.

14

WELLS FARGO BANK, N.A., et al.,

15

Defendants.

16
17
18
19
20

 This matter comes before the court on Wells Fargo, N.A., Fannie Mae, and Mortgage Electronic Registration Systems' ("MERS") Motion to Dismiss. Dkt. 37. In Plaintiff's Response, Plaintiff also makes a Motion to Allow Declaration. Dkt. 44. The Court has considered the parties' responsive briefings (Dkt. 45, 46), the Second Amended Complaint (Dkt. 27), and the remainder of the file herein.

21

BACKGROUND

22
23
24

 In the Second Amended Complaint ("Complaint"), Plaintiff alleges that SunTrust Mortgage, not Wells Fargo, NA or Wells Fargo Home Mortgage (collectively, "Wells Fargo"), is

1  the 'actual owner' of a Deed of Trust and related Promissory Note. According to the Complaint,

2  Plaintiff signed a Deed of Trust securing a Promissory Note to pay Sun Trust Mortgage on April

3  5, 2007, and Plaintiff received a notice to direct mortgage payments to Wells Fargo in December

4  2007, but an Assignment of the Deed of Trust in favor of Wells Fargo was not recorded until

5  October 8, 2013. Complaint, at ¶¶7, 9, 11, 32, 38.

6        Plaintiff alleges that she made mortgage payments to Wells Fargo from December 2007

7  until approximately late 2010 or early 2011, deliberately ceasing payments to go into default so

8  that she would qualify for a loan modification. Complaint, at ¶14. Plaintiff did this apparently on

9  the advice of Wells Fargo. *Id*. After defaulting on her loan, Plaintiff attempted to pay on a

10 modified loan starting in April 2011, continuing to make payments to Wells Fargo. *Id*. at ¶15.

11 Plaintiff defaulted on her modified loan, receiving a letter of default in September 2013 from

12 Wells Fargo and a Notice of Default by Northwest Trustee Services on February 9, 2014. *Id*. at

13 ¶16.

14        According to the Complaint, Northwest Trustee, the beneficiary designated to act on

15 behalf of Wells Fargo, pursued nonjudicial foreclosure proceedings against Plaintiff starting on

16 February 9, 2014, issuing a Notice of Default and Notice of Trustee Sale. Complaint, at ¶17.

17 Seeking relief from foreclosure, Plaintiff participated in a mediation program, "HAMP," during

18 which Wells Fargo physically appeared but did not show willingness to negotiate a resolution.

19 *Id*. at ¶¶20, 66. Plaintiff further alleges that at one mediation meeting, an attorney from RCO

20 Legal, a law firm that represented Wells Fargo, said with reference to Plaintiff, "We have a

21 problem. We don't have the note." Wells Fargo's underwriter responded with, "What do you

22 mean you don't have the note? That's a problem[,]" but the attorney stated to the mediator that

23 "it's nothing." *Id*. at ¶38.

24

1    Plaintiff alleges that MERS is a corporation created to electronically track consumer

2  mortgages, and that Wells Fargo is both a member and shareholder of MERS. Complaint, at ¶5.

3    The defendants request that the Court take judicial notice of the following documents: a

4  Deed of Trust, dated April 10, 2007; an Assignment of Deed of Trust from Sun Mortgage to

5  Wells Fargo, dated October 8, 2013; an Appointment of Successor Trustee to Northwest Trustee,

6  dated February 1, 2014; a Notice of Default issued to Plaintiff by Northwest Trustee, dated

7  February 9, 2014; Plaintiff's bankruptcy petition and the related Order; and a Notice of Trustee's

8  Sale of the Subject Property, dated May 8, 2015. Dkt. 38. Judicial notice of these documents is

9  appropriate. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006), *Bias v. Moynihan*, 508 F.3d

10  1212, 1225 (9th Cir. 2007). According to the defendants, the documents show that Plaintiff

11  entered into Chapter 13 bankruptcy on March 3, 2014; that Plaintiff listed Wells Fargo as a

12  secured creditor to the Subject Property; and that Plaintiff did not dispute Wells Fargo debt in

13  bankruptcy filings. Dkt. 37, at 3.

14                      STANDARD FOR MOTION TO DISMISS

15    Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

16  legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri*

17  *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as

18  admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d

19  1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

20  need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

21  to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

22  a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

23  (2007)(*internal citations omitted*). "Factual allegations must be enough to raise a right to relief

24

1   above the speculative level, on the assumption that all the allegations in the complaint are true

2   (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to

3   relief that is plausible on its face." *Id*. at 1974.

4   DISCUSSION

5   **1.   Violation of the Federal Fair Debt and Collection Practices Act ("FDCPA")**

6           As to Wells Fargo, the Complaint alleges two theories of FDCPA violations: (1)

7   collecting funds without authority starting in December 2007, because assignment of the Deed of

8   Trust and Promissory Note to Wells Fargo did not occur until October 2013; and (2) soliciting

9   the assistance of Northwest Trustee to initiate invalid nonjudicial foreclosure proceedings. Dkt.

10  27, at ¶¶30-32. Concerning Fannie Mae, the Complaint notes that the "report[ed]" owner of the

11  Deed of Trust and Promissory Note is Fannie Mae, but "[t]here has never been a recorded

12  Assignment . . . to Fannie Mae. Defendant Wells Fargo Bank, NA has acted as owner of the

13  Deed of Trust." *Id*. at ¶32. No mention is made of MERS.

14          The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt

15  collectors[.]" 15 U.S.C. § 1692(e). A "debt collector" is defined as:

16      "any person who uses any instrumentality of interstate commerce or the mails in any business
        the principal purpose of which is the collection of any debts, or who regularly collects or
17      attempts to collect . . . debts owed or due or asserted to be owed or due another . . . [T]he
        term includes any creditor who, in the process of collecting his own debts, uses any name
18      other than his own which would indicate that a third person is collecting or attempting to
        collect such debts." § 1692a(6).

19
20  The term does not include "any person collecting or attempting to collect any debt owed or due .

21  . . to the extent such activity . . . concerns a debt which was not in default at the time it was

22  obtained by such a person." § 1692a(6)(F)(iii). A debt collector includes an entity that "tak[es] or

23  threaten[s] to take any nonjudicial action to effect dispossession . . . if there is no present right to

24

ORDER ON WELLS FARGO, FANNIE MAE,
AND MERS' MOTION TO DISMISS- 4

1  present right to possession of the property claimed as collateral through an enforceable security

2  interest[.]" § 1692f(6).

3      Plaintiff has not stated a claim for relief under her first theory, that Wells Fargo collected

4  on funds without authority starting in December 2007, because the "not in default" exception

5  applies. *See* § 1692a(6)(F)(iii). Plaintiff does not allege that she was in default starting in

6  December 2007, the time that Wells Fargo began collecting on the loan, so FDCPA liability, if

7  any, could not have begun at that time.

8      Plaintiff has, however, stated a claim under her second theory. Assuming Plaintiff went

9  into default during 2010 or 2011; the Deed of Trust and Promissory Note were not properly

10  assigned by SunTrust Mortgage to Wells Fargo until October 2013; and Wells Fargo—or an

11  entity acting on its behalf—initiated nonjudicial foreclosure proceedings prior to October 2013,

12  then Wells Fargo may have violated the FDCPA if it attempted to collect on a debt without

13  authority to do so. *See* § 1692f(6). The Court previously found that Plaintiff stated a claim as to

14  Northwest Trustee under this theory, Dkt. 34, and assuming that Northwest Trustee acted on

15  behalf of Wells Fargo, *see* Dkt. 27, at ¶¶21-26, Plaintiff has articulated a plausible claim against

16  Wells Fargo. If, as Wells Fargo argues, Wells Fargo was the rightful holder of the Deed of Trust

17  and Promissory Note starting in December 2007, then Wells Fargo had the right to initiate

18  nonjudicial proceedings after Plaintiff's default, and the FDCPA claim will likely fail, but this

19  argument is not appropriately resolved at this stage of the litigation.

20      Therefore, the motion to dismiss the FDCPA claim should be denied as to Wells Fargo.

21  The Complaint fails to articulate any recognizable FDCPA claim against Fannie Mae and MERS.

22  The motion to dismiss the FDCPA claim should be granted and the claim dismissed as to Fannie

23  Mae and MERS.

24

**2. Violation of the Federal Consumer Protection Act ("FCPA")**

Plaintiff alleges multiple violations of the "Federal Consumer Protection Act." Dk. 27, at ¶¶33-41. In response to the defendants' argument that the Federal Consumer Protection Act does not exist, Plaintiff argues that the defendants have overlooked the Federal Trade Commission Act, which prohibits unfair or deceptive acts. Setting aside the issue of whether the Complaint sufficiently pleads relevant portions of that Act—and it appears that it does not—contrary to Plaintiff's assertion, that Act is explicitly inapplicable to banks, including Wells Fargo. 15 U.S.C. § 45(a)(2) and § 57(a)(f)(3).

Concerning Fannie Mae and MERS, Plaintiff has not stated a claim, with the Complaint making no direct reference to either defendant and Plaintiff not arguing that other portions of the Complaint should be incorporated. The motion to dismiss the FCPA claim should be granted and the claim dismissed as to all three defendants.

**3. Breach of Contract**

Plaintiff alleges that Wells Fargo "misrepresented in 2011 that they had the ability to modify Plaintiff's mortgage under HAMP. Since they did not own Plaintiff's loan, they could not modify it, nor would Plaintiff have entered into a contract with them if she had known they could not[.]" Dkt. 27, at ¶43. Wells Fargo also allegedly "either intentionally or negligently used wrong information to calculate" Plaintiff's Net Present Value. *Id*. at ¶44.

To state a claim for breach of contract, Plaintiff must make a showing that a contract imposed a duty, the duty is breached, and the breach proximately caused harm to Plaintiff. *Northwest Indep. Forest Mfrs. V. Dep't of Labor & Indus.*, 78 Wn.App. 707, 712 (Div. II, 1995). Applying the elements to the Complaint, Plaintiff has stated a claim against Wells Fargo. Plaintiff's alleged injury stems from a contract that apparently Plaintiff and Wells Fargo "entered

1   into at least verbally," which Wells Fargo breached by incorrectly calculating Plaintiff's Net

2   Present Value and improperly representing that Wells Fargo could modify Plaintiff's loan. Based

3   on the pleadings, Plaintiff has stated a breach of contract claim as to Wells Fargo. The

4   defendants' argument that Wells Fargo never owed Plaintiff an obligation to modify the loan is

5   unavailing, because it requires the Court to consider facts about the contract that are not found in

6   the pleadings.

7        Therefore, the motion to dismiss the breach of contract claim should be denied as to

8   Wells Fargo. The Complaint fails to describe any breach of contract claim against Fannie Mae

9   and MERS, so the motion to dismiss the breach of contract claim should be granted and the

10   claim dismissed as to Fannie Mae and MERS.

11   **4. Violation of the Washington Deed of Trust Act ("DTA")**

12        Plaintiff alleges that Wells Fargo "had no right to collect the funds Plaintiff paid, and no

13   right to do the modification . . . and no right to start a nonjudicial foreclosure against Plaintiff."

14   Dkt. 27, at ¶14. Wells Fargo's actions "nullif[y] the foreclosure of the deed of trust by

15   [Northwest Trustee] and Wells Fargo," where Wells Fargo allegedly appointed or instructed

16   Northwest Trustee without authority. *Id*. at ¶¶48, 49. The Complaint makes no mention of either

17   Fannie Mae or MERS.

18        Under Washington law, a foreclosure sale is a prerequisite to bringing a DTA claim.

19   *Frias v. Asset Foreclosure Services, Inc.*, 181 Wn.2d 412 (2014); *Vawter v. Quality Loan Serv.*

20   *Corp. of Wash.*, 707 F.Supp.2d 1115, 123 (W.D.Wash. 2013). *See also*, *Cabage v. Nw. Tr.*

21   *Servs., Inc.,* No. 45953-1-II, 2015 WL 7909545, at *4 (Div. II, 2015). Because there has been no

22   foreclosure sale, which Plaintiff admits, the DTA claim fails.

23

24

1       Plaintiff insists that she does not seek damages under the DTA, but rather only seeks to

2 enjoin foreclosure. *Frias* should be applied more broadly than Plaintiff insists. *Frias* answered

3 the question of whether damages are recoverable under the DTA absent a foreclosure sale, but an

4 interpretation of *Frias* that would allow parties to seek injunctive relief by complaint without

5 first following relevant state law provisions, such as RCW 61.24.130, would seem to undermine

6 the purpose of statutorily–prescribed procedures. *See* RCW 61.24.130; *CHD, Inc. v. Boyles*, 138

7 Wn.App. 131, 137 (2007)("The sole method to contest and enjoin a foreclosure sale is to file an

8 action to enjoin or restrain the sale in accordance with RCW 61.24.130"). Especially where, as

9 here, Plaintiff does not allege that she sought injunctive relief under RCW 61.24.130 but is now

10 without recourse, a narrow interpretation of *Frias* should be rejected. This interpretation is

11 supported by some language in *Frias*, which hints that its holding may not be limited to just

12 damages. *E.g., Frias*, at 428 ("Under the current statutory framework, there is no independent

13 cause of action under the DTA for DTA violations absent a completed foreclosure sale").

14       The motion to dismiss the DTA claim should be granted and the claim dismissed as to all

15 three defendants.

16 **5.  Violation of the Washington Consumer Protection Act ("CPA")**

17       Plaintiff alleges that Wells Fargo violated the CPA by instructing or allowing its

18 employees to "rende[r] deceptive and misleading directions to borrowers resulting in the

19 borrowers being in default of their loan, which results in substantial declination of their credit

20 score . . . inability to have good credit . . . and interest to pay[.]" Dkt. 27, at ¶52. Wells Fargo

21 allegedly engages in this practice with "anyone seeking a modification of their loan," and did so

22 to Plaintiff in October 2010. *Id*. at ¶¶14, 54. Plaintiff alleges she has since been unable to

23 perform at full capacity at work. *Id*. at ¶54.

24

1   To prevail on a CPA action, the plaintiff must show: "(1) unfair or deceptive act or

2   practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in

3   his or her business or property; (5) causation." *Bain v. Metro Mortgage Grp., Inc.*, 175 Wn.2d

4   83, 115 (2012), quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105

5   Wn.2d 778, 780 (1986) (quotations omitted).

6   Plaintiff has stated a CPA claim as to Wells Fargo. The unfair or deceptive act alleged is

7   Wells Fargo's communication to Plaintiff during October 2010, which caused Plaintiff harm

8   after Plaintiff followed Wells Fargo's misleading advice to deliberately default on her loan at a

9   time when Plaintiff apparently otherwise did not need to do so. The trade or commerce element

10  is not challenged. The public interest element is satisfied by the allegation that Wells Fargo also

11  harmed other borrowers who, like Plaintiff, sought advice from Wells Fargo about how to

12  modify their loans.

13  According to the defendants, Plaintiff alleges an implausible theory, because no lender

14  would ever tell a borrower to default when the borrower need not do so. Yet, Plaintiff alleges

15  that she deliberately stopped making loan payments and went into default at a time when she

16  financially did not need to, Dkt. 27, at ¶¶14, 56, so Plaintiff's theory is plausible. The defendants

17  also argue that Plaintiff has not sufficiently alleged causation, because the "injury" was caused

18  by Plaintiff, whose loan default resulted in foreclosure proceedings, but this ignores Wells

19  Fargo's influence in Plaintiff's decision to default, a prerequisite to the foreclosure. Plaintiff has

20  stated a claim for relief as to Wells Fargo.

21  The motion to dismiss the CPA claim should be denied as to Wells Fargo. Plaintiff makes

22  no mention of Fannie Mae or MERS. The motion to dismiss the CPA claim should be granted

23  and the claim dismissed as to Fannie Mae and MERS.

24

**6.  Misrepresentation**

Similar to the CPA claim, Plaintiff alleges misrepresentation based on Wells Fargo's suggestion in "late 2010" that Plaintiff should deliberately go into default in order to modify her loan, when Plaintiff had access to other capital. Dkt. 27, at ¶56. The parties agree that a three year statute of limitations applies, *see* RCW 4.16.080, but they disagree about when the three years began. According to the defendants, it began in 2010, but according to Plaintiff, who applies the discovery rule, the earliest that Plaintiff knew or should have known of the grounds for the misrepresentation was February 2014, when Wells Fargo initiated nonjudicial foreclosure.

The Court should make all reasonable inferences in favor of Plaintiff, because dismissal on 12(b)(6) grounds is disfavored, but even when doing so, Plaintiff has not alleged facts sufficient to overcome the three year statute of limitations. The facts underlying Plaintiff's misrepresentation allegation arose in late 2010, but the only references to February 2014, the time that Plaintiff argues she first knew or should have known of Wells Fargo's fraud, provide no facts from which to make reasonable inferences in Plaintiff's favor. *See* Dkt. 27, at ¶¶16, 17.

As to Wells Fargo, the motion to dismiss the misrepresentation claim should be granted without prejudice. The claim makes no direct reference to either Fannie Mae or MERS. The motion to dismiss the misrepresentation claim should be granted and the claim dismissed as to Fannie Mae and MERS.

**7.  Misrepresentation Through Omission**

In addition to alleging misrepresentation through the defendants' affirmative actions (Count 6), Plaintiff alleges two theories of misrepresentation by omission (Count 7): (1) Wells Fargo failed to inform Plaintiff that Wells Fargo did not own the Promissory Note and Deed of

1  Trust; and (2) Wells Fargo failed to inform Plaintiff that "she could do a workout plan, outside

2  the bankruptcy and she could avoid bankruptcy by doing that." Dkt. 27, at ¶¶62, 63.

3    To establish misrepresentation, a plaintiff must prove nine elements: (1) representation of

4  an existing fact, (2) the materiality of the representation, (3) the falsity of the representation, (4)

5  the speaker's knowledge of the falsity of the representation or ignorance of its truth, (5) the

6  speaker's intent that the listener rely on the false representation, (6) the listener's ignorance of its

7  falsity, (7) the listener's reliance on the false representation, (8) the listener's right to rely on the

8  representation, and (9) damage from reliance on the false representation. *Baertschi v. Jordan,* 68

9  Wash.2d 478, 482, 413 P.2d 657 (1966). An omission may constitute misrepresentation if the

10  speaker had a duty to disclose certain information and breached the duty, *Landstar Inway Inc. v.*

11  *Samrow*, 181 Wn.App. 109, 124 (Div. II, 2014), because under Washington law, "it is well

12  settled that the suppression of a material fact which a party is bound in good faith to disclose is

13  equivalent to false representation." *Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 625 (1964),

14  quoting *Oates v. Taylor*, 31 Wn.2d 898, 903 (1949). Misrepresentation must be pled with

15  particularity. Fed.R.Civ.P. 9(b).

16    Considering Plaintiff's first theory, that Wells Fargo failed to inform Plaintiff that Wells

17  Fargo was not the actual holder of the Deed of Trust and Promissory Note, Plaintiff fails to state

18  a claim. Most fundamentally, this theory fails because if Wells Fargo was not the actual holder,

19  as Plaintiff alleges, Plaintiff makes no showing that Wells Fargo still had an affirmative duty to

20  inform Plaintiff of that fact. If Wells Fargo had no duty, then Wells Fargo could not have

21  breached a duty, and so the misrepresentation by omission claim fails. *Landstar*, 181 Wn.App. at

22  124.

23

24

Considering Plaintiff's second theory, that Wells Fargo failed to inform Plaintiff of her option to do a workout plan, the Complaint fails on account of several elements, which are not alleged even in general terms. Assuming elements 1-3 could be satisfied by Wells Fargo's failure to inform Plaintiff, and assuming that Plaintiff was not aware of this omission's falsity (element 6) and relied on the omission (element 7), which caused her harm (element 9), Plaintiff does not allege elements 4, 5, and 8. There is no allegation that Wells Fargo had knowledge of this omission (element 4); that Wells Fargo intended for Plaintiff to rely on that omission (element 5); and that Plaintiff had the right to rely on the omission (element 8).

The motion to dismiss the misrepresentation by omission claim should be granted as to Wells Fargo, but the claim should be dismissed without prejudice. The claim makes no direct reference to either Fannie Mae or MERS. The motion to dismiss the misrepresentation claim should be granted and the claim dismissed as to Fannie Mae and MERS.

**8. Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Wells Fargo failed to participate in the Foreclosure Mediation Program in good faith, when Wells Fargo physically appeared at two mediation sessions but only offered unreasonable 'take it or leave it' offers. Dkt. 27, at ¶65.  Plaintiff also alleges that Wells Fargo did not act in good faith, by initiating nonjudicial foreclosure proceedings prior to the completion of mediation proceedings. *Id*. at ¶66.

Plaintiff describes with sufficient specificity at least two situations where Wells Fargo apparently did not act in good faith and fair dealing. *See* Dkt. 27, at ¶¶65, 66. However, Plaintiff has not sufficiently articulated the contractual basis from which the duties of good faith and fair dealing flow. Without a more specific description, the Court is at a loss—and will not speculate—as to the contractual basis of the breach. Plaintiff argues that the two contracts at

1   issue in the case, the Deed of Trust and the Promissory Note, create contractual bases for the

2   breach, but Plaintiff does not identify any specific term or provision of either contract that Wells

3   Fargo failed to perform. *Johnson v. Yousoofian*, 84 Wn.App. 755, 762 (1996); *Badgett v. Sec.*

4   *State Bank*, 116 Wn.2d 563, 570 (1991). *See also*, *Gossen v. JPMorgan Chase Bank*, 819

5   F.Supp.2d 1162, 1170 (W.D.Wash. 2011), *Wear v. Sierra Pacific Mortg. Co., Inc.*, 2013 WL

6   6008498 at *6 (W.D.Wash. 2013).

7          The motion to dismiss the breach of good faith and fair dealing claim should be granted

8   as to Wells Fargo, but the claim should be dismissed without prejudice. Neither Fannie Mae nor

9   MERS is mentioned with relation to this claim, so the motion to dismiss the breach of good faith

10  and fair dealing claim should be granted and the claim dismissed as to both Fannie Mae and

11  MERS.

12  **9.   Intentional Infliction of Emotional Distress**

13         Plaintiff's outrage claim, other than incorporating prior paragraphs, states in its entirety

14  as follows:

15      Defendants' conduct has been egregious and designed to intimidate and harass plaintiff into
16      giving up her home. Their actions are continuing and ongoing. Plaintiff has been in a
        constant state of turmoil and distress, which has affected her overall health, [sic] because of
        Defendants' actions. Defendants intentionally or negligently inflicted emotional distress on
17      Plaintiff. Complaint, at ¶70.

18  Plaintiff urges the Court to incorporate the underlying facts that gave rise to her claim, briefly

19  summarized as follows: Plaintiff followed advice from Wells Fargo to default on her mortgage

20  loan to quality for a Wells Fargo loan modification program, after which Wells Fargo started a

21  foreclosure action and rebuffed Plaintiff's efforts to find an amicable resolution. Dkt. 45, at 20.

22

23

24

1    To establish a claim for intentional infliction of emotional distress, also known as

2    outrage, the plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless

3    infliction of emotional distress, and (3) the plaintiff's severe emotional distress. *Reid v. Pierce*

4    *Cty.*, 136 Wn. 2d 195, 201 (1998). Whether certain conduct is sufficiently outrageous is

5    ordinarily for the jury, but it "is initially for the court to determine if reasonable minds could

6    differ." *Dicomes v. State,* 113 Wn.2d 612, 630 (1989). The conduct "must be 'so outrageous in

7    character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

8    regarded as atrocious, and utterly intolerable in a civilized community.'" *Grange Ins. Ass'n v.*

9    *Roberts*, 179 Wn.App. 739, 754 (2013).

10    The claim should be dismissed against Fannie Mae and MERS, because Plaintiff makes

11    no mention of either defendant, Dkt. 27, at ¶70, and Plaintiff makes no effort to incorporate

12    relevant facts as to either defendant. *See* Dkt. 45, at 20. Although Plaintiff does incorporate

13    alleged facts specific to Wells Fargo, these facts do not rise to the level of conduct—

14    outrageous—that is supported by case law. *See, e.g., Doe v. Corp. of President of Church of*

15    *Jesus Christ of Latter-Day Saints*, 141 Wn.App. 407 (2007) (person in position of authority

16    failed to report child abuse); and *Seaman v. Karr*, 114 Wn.App. 665, 685-88 (2002) (plaintiffs

17    wrongfully accused of murder and told they would go to jail for murder if not cooperative). The

18    motion to dismiss the intentional infliction of emotional distress claim should be granted and the

19    claim dismissed as to all three defendants.

20    **10. Violation of Consent Order**

21    According to the Complaint, Wells Fargo has violated a Consent Order, issued by the

22    Comptroller of the Currency from the Department of Treasury on April 13, 2011 in Sioux Falls,

23    South Dakota, that requires Wells Fargo to provide consumers with a single point of contact and

24

1   prohibits "dual tracking of loan modifications and foreclosures." Dkt. 27, at ¶ 27. Plaintiff

2   defends the claim by arguing—without citing to any case law—that "the case law seems to

3   militate against Plaintiff and force an agency order[*sic*]." Dkt. 45, at 20. Plaintiff also argues that

4   "[i]t is important for the Court to know that this Consent Order was entered and that Defendant

5   Wells Fargo Bank is in violation of it[*sic*]." *Id*.

6       Educating the Court should not be the primary basis for alleging a claim, and Plaintiff has

7   not stated a claim upon which relief can be granted. Assuming that, as alleged, Wells Fargo

8   harmed Plaintiff and Wells Fargo's actions violated the Consent Order, it is not clear that

9   violating the Consent Order creates a cause of action for this particular person, Plaintiff, and it is

10  not clear whether violating the Consent Order can result in a cause of action in Washington,

11  where the administrative order was issued by a federal agency in South Dakota.

12      The defendants' motion to dismiss the violation of consent order claim should be granted

13  and the claim dismissed as to all three defendants.

14  **11. Judicial Estoppel**

15      The doctrine of equitable estoppel precludes a party from "gaining an advantage by

16  asserting one position, and then later seeking an advantage by taking a clearly inconsistent

17  position." *Rissetto v. Plumbers & Steamfitters Local* 343, 94 F.3d 597, 600–601 (9th Cir.1996);

18  *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990). Applied to bankruptcy cases, "a party is

19  judicially stopped from asserting a cause of action not raised in a reorganization plan or

20  otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton v. State Farm*

21  *Fire & Case. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). Courts may consider three factors when

22  considering whether to apply the doctrine: (1) whether a party's later position is "clearly

23  inconsistent"; (2) whether the party has succeeded in persuading a court to accept that party's

24

1  earlier position, so that "judicial acceptance of an inconsistent position in a later proceeding

2  would create the perception that either the first or the second court was misled"; and (3) whether

3  the party seeking to assert an inconsistent position would drive an unfair advantage or impose an

4  unfair detriment on the opposing party. *Id*., at 782, 783 (quotations omitted).

5        Applying the doctrine of equitable estoppel to this case at this stage in the litigation is

6  inequitable. Plaintiff's bankruptcy filing is "clearly inconsistent" with this case, insofar as

7  Plaintiff now disputes whether she owes Wells Fargo for the Subject Property loan. However, the

8  Court cannot conclude that rejecting the doctrine's application here would result in the

9  perception that either the bankruptcy court or this Court have been misled, especially where the

10  alleged conversation that supports Plaintiff's theory ("We have a problem. We don't have the

11  note") arose after Plaintiff entered into bankruptcy. Under Plaintiff's theory, Plaintiff reported

12  what she knew at the time, which is not misleading. Finally, at least at this stage in the litigation,

13  Plaintiff has not derived an unfair advantage or imposed an unfair detriment, because at least as

14  alleged, Plaintiff may not have known that Wells Fargo was not the holder of her loan until after

15  entering into bankruptcy. The Court must reject application of the doctrine of equitable estoppel

16  at this time, without prejudice.

17                                             * * *

18        Therefore, it is **HEREBY ORDERED** that the Wells Fargo, Fannie Mae, and MERS'

19  Motion to Dismiss (Dkt. 37) should be **GRANTED IN PART**.

20        As to Fannie Mae and MERS, the Motion to Dismiss is **GRANTED** and all claims are

21  **DISMISSED**.

22        As to Wells Fargo, the Motion to Dismiss is denied or granted and claims dismissed as

23  follows:

24

1      Count 1 (FDCPA): Denied. The claim is not dismissed.

2      Count 2 (FCPA): Granted. The claim is dismissed.

3      Count 3 (Breach of Contract): Denied. The claim is not dismissed.

4      Count 4 (DTA): Granted. The claim is dismissed.

5      Count 5 (CPA): Denied. The claim is not dismissed.

6      Count 6 (Misrepresentation): Granted. The claim is dismissed without prejudice.

7      Count 7 (Misrepresentation by Omission): Granted. The claim is dismissed without prejudice.

8

9      Count 8 (Breach of Covenant of Good Faith and Fair Dealing): Granted. The claim is dismissed without prejudice.

10     Count 9 (Intentional Infliction of Emotional Distress): Granted. The claim is dismissed.

11     Count 10 (Violation of Consent Order): Granted. The claim is dismissed.

12     Plaintiff's Motion to Allow Declaration (Dkt. 44) is **DENIED**.

13     The Clerk is directed to send uncertified copies of this Order to all counsel of record and

14 to any party appearing *pro se* at said party's last known address.

15     Dated this 2nd day of March, 2016.

16

17

18     ROBERT J. BRYAN
       United States District Judge

19

20

21

22

23

24

ORDER ON WELLS FARGO, FANNIE MAE,
AND MERS' MOTION TO DISMISS- 17