# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| TERESA S. TITUS,<br><br>               Plaintiff,<br>   v.<br><br>WELLS FARGO, N.A., WELLS FARGO HOME MORTGAGE, FEDERAL NATIONAL MORTGAGE ASSOCIATION aka FANNIE MAE, NORTHWEST TRUSTEES SERVICES, INCL., RCO LEGAL P.S., and MORTGAGE ELECTRONIC SYSTEM (MERS),<br><br>               Defendants. | CASE NO. 3:15-cv-05690<br><br>ORDER ON (1) WELLS FARGO, FANNIE MAE, AND MERS' MOTION FOR SUMMARY JUDGMENT AND (2) JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS NORTHWEST TRUSTEE SERVICES INC. AND RCO LEGAL, P.S. |

THIS MATTER comes before the Court on two matters: the Motion for Summary Judgment (Dkt. 66) filed by several defendants: Wells Fargo, N.A. and Wells Fargo Home Mortgage (collectively, "Wells Fargo"), Federal National Mortgage Association, aka Fannie Mae, and Mortgage Electronic System ("MERS"); and the Joint Motion for Summary Judgment of Defendants Northwest Trustee Services, Inc. and RCO Legal, P.S (Dkt. 69). The Court has

ORDER ON (1) WELLS FARGO, FANNIE MAE, AND MERS' MOTION FOR SUMMARY JUDGMENT AND (2) JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS NORTHWEST TRUSTEE SERVICES INC. AND RCO LEGAL, P.S. - 1

considered the pleadings filed in support of and in opposition to the motions, oral argument by the parties held in open court on June 5, 2017, and the remainder of the file herein.

## PROCEDURAL HISTORY

The Court previously dismissed all claims against Fannie Mae and MERS. Dkt. 47 at 16. Because there are no pending claims against Fannie Mae and MERS, for both defendants the motion for summary judgment is moot.[1]

Concerning Wells Fargo, the Court dismissed all claims except those for violations of the Federal Debt Collection Practices Act (FDCPA) (Claim 1) and the Washington Consumer Protection Act (CPA) (Claim 5), as well as a common law claim for breach of contract (Count 3). Dkt. 47 at 16.

The Court dismissed all claims against RCO Legal, except the claim for violations of the FDCPA (Claim 1). Dkt. 33 at 8. The Court dismissed all claims against Northwest Trustee except the claim for violations of the FDCPA (Claim 1). Dkt. 32 at 9.

## RELEVANT FACTS

The facts substantiated by the record are recited in favor of the nonmoving party, Ms. Titus.

In 2007, Ms. Titus executed a promissory note ("Promissory Note") to obtain a mortgage loan from SunTrust Mortgage, Inc. Dkt. 67-1. The Promissory Note named Ms. Titus as Borrower and SunTrust Mortgage as Lender. The Promissory Note states that the Borrower "understand[s] that the Lender may transfer this Note" and that "anyone who takes this Note by transfer . . . is called the 'Note Holder.'" *Id*. To secure her obligations under the Note, Ms. Titus

---

[1] The motion is filed by Fannie Mae and MERS but does not make arguments specific to them; presumably they filed this motion *pro forma* in an abundance of caution.

ORDER ON (1) WELLS FARGO, FANNIE MAE, AND MERS' MOTION FOR SUMMARY JUDGMENT AND (2) JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS NORTHWEST TRUSTEE SERVICES INC. AND RCO LEGAL, P.S. - 2

1  executed a Deed of Trust, which listed Ms. Titus as Borrower and SunTrust Mortgage as Lender.
2  Dkt. 67-3.

3  In December of 2010, Ms. Titus defaulted on her loan by deliberately not paying monthly
4  mortgage payments. Dkt. 74 at ¶12. She made the decision on the telephonic advice of Wells
5  Fargo employees, who, Ms. Titus represents, told her that defaulting on her loan was the only
6  way to gain eligibility to refinance her loan. *Id*. at ¶¶9-11. At that time, Ms. Titus was gainfully
7  employed and had over $70,000 in savings. *Id*. After defaulting on the loan, Ms. Titus qualified
8  for a HAMP loan modification ("Modified Loan Agreement"), which she executed on June 17,
9  2011. *Id*. at ¶13; Dkt. 67-6. The Modified Loan Agreement listed Wells Fargo as "Lender or
10 Servicer" and MERS as "nominee for lender and lender's successors and assigns." *Id*. at 2. The
11 agreement gave MERS "the right to exercise . . . the right to foreclose . . . and to take any action
12 required of the lender[.]" *Id*. at 12.

13 Ms. Titus defaulted a second time in 2013, this time due to financial hardship. Dkt. 74 at
14 ¶15. By letter dated September 16, 2013, Wells Fargo informed Ms. Titus that her loan was in
15 default. Dkt. 74-1 at 2. The letter explained how Ms. Titus could cure the default and requested
16 that Ms. Titus continue making monthly loan payments. *Id*. A formal Notice of Default later
17 followed, naming Wells Fargo as the loan servicer. Dkt. 70-8.

18 On October 8, 2013, MERS, as nominee for SunTrust Mortgage, executed an Assignment
19 of Deed of Trust conveying the Deed of Trust to Wells Fargo. Dkt. 67-9. On December 19, 2013,
20 Wells Fargo executed a Beneficiary Declaration affirming its status as the "actual holder of the
21 promissory note . . . secured by the deed of trust." Dkt. 67-8. The Beneficiary Declaration states
22 that "the trustee may rely upon the truth and accuracy of the averments made in this declaration."
23 *Id*.

24

| | |
|---|---|
| 1 | Ms. Titus entered Chapter 13 bankruptcy on March 3, 2014, which remained pending |
| 2 | until April 17, 2015. Dkt. 74 at ¶¶15, 18. Thereafter Ms. Titus sought a second loan |
| 3 | modification. Represented by an attorney, Ms. Titus attended two foreclosure mediation |
| 4 | sessions, in July and September of 2015. Ms. Titus and Wells Fargo both signed an Agreement |
| 5 | to Participate in Foreclosure Mediation. Dkt. 74-3 at 2, 3. The mediation was unsuccessful. Dkt. |
| 6 | 70-13 at 2, 3. According to Ms. Titus, Wells Fargo made only "take it or leave it" offers, without |
| 7 | meaningfully negotiating. Dkt. 74 at ¶34. A legal assistant to Ms. Titus' then-attorney states that |
| 8 | at the July 2015 session she heard an attorney for Wells Fargo state, "We don't have the note." |
| 9 | Dkt. 74-6 at 7. |
| 10 | In support of Wells Fargo's argument that it did (and still does) possess the Promissory |
| 11 | Note, at oral argument Wells Fargo—for the first time—produced what it represents to be the |
| 12 | original Promissory Note. Dkt. 85. The Promissory Note has an indorsement in blank by |
| 13 | SunTrust Mortgage and a signature signed in blue ink by Ms. Titus. Dkt. 85 at 3. According to |
| 14 | Wells Fargo's records custodian, Shae Smith, Wells Fargo's business records show loan |
| 15 | servicing by Wells Fargo beginning in December 1, 2007 and possession of the Promissory Note |
| 16 | on January 7, 2008. Dkt. 67 at ¶¶3, 4; Dkt. 67-2. |

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. Any factual issues of controversy must be resolved in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

1. <u>FDCPA (Wells Fargo, Northwest Trustee, and RCO Legal)</u>

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). The FDCPA defines "debt collector" broadly. *See* 15 U.S.C. § 1692a(6). Specific to enforcing security interests, civil liability arises for violating 15 U.S.C. §

1692f(6). *Dowers v. Nationstar Mortgage, LLC*, 852 F.3d 964, 970 (9th Cir. 2017), citing to *Ho v. Recontrust Co, NA*, 840 F.3d 618, 622 (9th Cir. 2016). Section 1692f(6) prohibits:

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. §1692f(6).

### a. Wells Fargo.

Applied here, Wells Fargo does not deny that it has taken "nonjudicial action to effect dispossession," for example, through the February 9, 2014, issuance of a Notice of Foreclosure. Dkt. 70-8. *See also*, Dkt. 74-1 at 2. The main issue then, is whether there is a material issue of fact as to Wells Fargo's "present right to possession" of the Subject Property. The Court finds that there is not.

In defense of Wells Fargo's position it has the right to possession, as the rightful, undisputed holder of the Promissory Note, Wells Fargo points to the declaration of a Wells Fargo records custodian, Shae Smith. Ms. Smith declares under penalty of perjury that "Wells Fargo first received and held the original promissory note on January 8, 2008, and continued to hold the Note, at all material times, to this day." Dkt. 75 at ln. 16. Ms. Smith's declaration refers to two attached exhibits, a copy of the Promissory Note and a business record resembling a Wells Fargo-generated loan activity spreadsheet. *Id*.; Dkt. 61-1; Dkt. 67-2. At oral argument, Wells Fargo produced what it represents is the original Promissory Note, with an indorsement in blank by SunTrust Mortgage. Dkt. 85.

The Court finds that there is no issue of material fact as to Wells Fargo's ownership of the Promissory Note, from January 2008 to present. There is no reasonable dispute that Wells

Fargo presently possesses the Promissory Note, which SunTrust Mortgage indorsed in blank. From that premise, the only conclusion supported by the record is that Wells Fargo received possession of the Promissory Note in 2008. Wells Fargo's receipt is substantiated by the declaration of Wells Fargo's business custodian, who represents that business records reflect possession in January 2008, and by Wells Fargo's conduct after 2008, where Wells Fargo acted and held itself out to be the lender, corresponding with Ms. Titus about her loan default and modifications.

Ms. Titus does not overcome the showing that, since 2008, Wells Fargo has held the Promissory Note. At oral argument and in her briefing, Ms. Titus points to two primary places that she contends create an issue of material fact. First, Ms. Titus points to the various "versions" of the Promissory Note. However, none of the distinctions among the versions, a stray check mark, for example, show an intent by SunTrust Mortgage to do anything other than indorse in blank. *See* Dkts. 82-8, 82-9, 82-11, 82-12. The minor, cosmetic differences do not negate the force of a security interest possessed by a party and properly indorsed in blank under the rules. *See* UCC §3-205. Second, Ms. Titus points to the comment by the RCO Legal attorney, who stated, "We don't have the note." The admissibility of the statement under the rules of evidence is questionable, but even if it were admissible, the comment provides no reasonable basis for a trier of fact to reject Wells Fargo as holder of the Promissory Note. No context is provided for the comment to create more than a theoretical, plausible alternative to the remainder of the record. Wells Fargo undisputedly has held the note, and therefore, its action to pursue nonjudicial foreclosure did not violate § 1692f(6).

As to the FDCPA claim, Wells Fargo's motion for summary judgment of dismissal should be granted.

**b. Northwest Trustee and RCO Legal.**

Because the record demonstrates that Wells Fargo held the Promissory Note since January 2008, its named beneficiary, Northwest Trustee, was entitled to take actions to pursue nonjudicial foreclosure. *See* §1692f(6). The same holds true for Wells Fargo's attorney, RCO Legal. Ms. Titus does not dispute this; she argues only that Wells Fargo did not possess the Promissory Note in the first place, so its named beneficiary, Northwest Trustee, and attorney, RCO Legal, were not entitled to enforce the note. Because there is no issue of material fact as to Wells Fargo's possession of the note, *see* above, Ms. Titus' argument is unavailing.

As to the FDCPA claim, Northwest Trustee and RCO Legal's motion for summary judgment of dismissal should be granted.

\* \* \*

The findings of this Court are particular to the chain of title produced in this case. This holding should not be construed as support for lenders to trample the rights of consumer-debtors. If, for example, Wells Fargo was not the holder of the Promissory Note or if SunTrust had not indorsed the note in blank, Ms. Titus would probably have defeated summary judgment. Although Ms. Titus ultimately cannot prevail in this case, despite the defendants' argument to the contrary, §1692f(6) could squarely apply to the type of situation that gave rise to Ms. Titus' claim. Enforcing security interests does not generally give rise to FDCPA liability, but there is an unambiguous carve out under §1692f(6). *Ho*, 840 F.3d at 622 ("Ordinarily, section 1692f(6) would protect a consumer against the abusive practices of a security enforcer who does not fit the broader definition of a debt collector"). This order should not be read to the contrary.

Wells Fargo did not present the Court with a satisfactory explanation of why the original Promissory Note was not provided to Ms. Titus prior before argument. Wells Fargo's position

1 was, in effect, that Ms. Titus should trust Wells Fargo's representations. While it would be imprudent for the Court to ignore the late-filed Promissory Note for purposes of ruling on the pending summary judgment motions, Wells Fargo can—and should—do better.

2. <u>Violation of the Washington Consumer Protection Act (CPA) (Wells Fargo)</u>

To prevail at trial on a CPA claim, the plaintiff must show: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Bain v. Metro Mortgage Grp., Inc.*, 175 Wn.2d 83, 115 (2012), quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780 (1986) (quotations omitted). At this stage in the proceedings, the plaintiff need only establish an issue of material fact as to each of the *Hangman* elements.

Wells Fargo argues that summary judgment of dismissal is warranted because the claim is time-barred. Dkt. 66 at 14, 15; Dkt. 75 at 8, 9. Wells Fargo argues in the alternative that Ms. Titus has not made a sufficient showing as to each of the *Hangman* elements.

Ms. Titus argues that the statute of limitations was tolled by bankruptcy proceedings and that she has made a sufficient showing as to all *Hangman* elements. Dkt. 73 at 13-17.

The parties agree that a four-year statute of limitations applies. The CPA claim centers on alleged misrepresentations by Wells Fargo to Ms. Titus starting in October of 2010, but this case was not filed until August 28, 2015, so the claim is barred unless the statute of limitations is tolled. According to Ms. Titus, bankruptcy proceedings, which were pending from March 3, 2014, until April 17, 2015, tolled the statute of limitations. Dkt. 73 at 14. Ms. Titus cites to RCW 4.16.230 and 11 U.S.C. § 108(c), *see id.*, but neither statute applies. The state statute, RCW 4.16.230, provides for the tolling of a statute of limitations when "the commencement of an action is stayed by injunction or a statutory prohibition," but this case was not filed until *after* the

bankruptcy proceedings. There was no stay. The bankruptcy statute cited similarly provides statutory authority to pause judicial proceedings under certain circumstances while bankruptcy proceedings are pending, but again, at the time of the bankruptcy filing there was no pending litigation. Because the statute of limitations should not be tolled, the CPA claim should be barred by the statute of limitations.

Even were the CPA claim not barred by the statute of limitations, Ms. Titus has not made a sufficient showing for at least three *Hangman* elements: public interest impact, injury to business or property, and causation. Regarding public interest, Ms. Titus argues that other consumers, like Ms. Titus, were told to stop making loan payments in order to qualify for a loan modification. This conclusion is based only upon Ms. Titus' experience with Wells Fargo, where she "called the Wells Fargo call center many times and got a different employee each time [and] received the same instructions each time." Dkt. 73 at 15. Ms. Titus offers nothing beyond vagaries and speculation. In her declaration, Ms. Titus describes two "similar situations where Wells Fargo's conduct has been egregious," *see* Dkt. 74 at ¶¶41, 42, but beyond the fact that the two anecdotes involve individuals with Wells Fargo home loans, neither anecdote is parallel to this case. There is no showing, for example, of other individuals receiving similar telephonic advice. *See Hangman*, at 105 Wn.2d at 790.

Regarding the injury to business or property, Ms. Titus states that "the injury that was caused to Plaintiff is demonstrated in her Declaration," but she does not cite to a specific paragraph within her declaration. Dkt. 73 at 15. The paragraph that most directly articulates her injury refers only to her personal health. *See* Dkt. 74 at ¶ 38. Anticipating that her personal health is not a sufficient injury for CPA purposes, *see Panag v. Farmers Inc. Co. of Wash.*, 166 Wn.2d 27 (2009), Ms. Titus attempts to bootstrap her personal injury to the welfare of her business. She

argues that "stress . . . exacerbated her PTSD," which "adversely impacts her business." Dkt. 73 at 15. This argument is not supported by the record. Her declaration does not describe the harm to her paralegal business with any specificity or clarity. Even assuming that her business had suffered harm, there is no showing, beyond general psychological conditions allegedly sustained, that the conduct complained of—Wells Fargo acting as if it were the loan owner when it was not, in October of 2010—caused harm to her business.

On the record presented to the Court, Ms. Titus has not established an issue of material fact as at least three necessary elements for her CPA claim.

Wells Fargo's motion for summary judgment of dismissal should be granted as to the CPA claim, because the CPA claim is barred by the statute of limitations, and Ms. Titus has not established an issue of material fact as to several necessary elements.

3. <u>Breach of Contract (Wells Fargo)</u>

To survive summary judgment of a breach of contract claim, the nonmoving party must establish an issue of material fact for the following elements: a contract imposed a duty; the defendant breached the duty; the defendant caused the breach that resulted in harm to the plaintiff. *Northwest Indep. Forest Mfrs. V. Dep't of Labor & Indus.*, 78 Wn.App. 707, 712 (Div. II, 1995).

Ms. Titus advances three theories for the breach of contract claim: (1) in 2011, Wells Fargo agreed to modify Plaintiff's loan "without the authority to do so and [without] title to the property," (2) in 2015, during foreclosure mediation, Wells Fargo refused to disclose "how they applied any net present values" when Wells Fargo "still did not have the authority to modify" the loan; and (3) "breach of the mediation agreement," Dkt. 73 at 11, 12. *See* Dkt. 27 at ¶¶45-45.

ORDER ON (1) WELLS FARGO, FANNIE MAE, AND MERS' MOTION FOR SUMMARY JUDGMENT AND (2) JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS NORTHWEST TRUSTEE SERVICES INC. AND RCO LEGAL, P.S. - 11

The breach of contract claim against Wells Fargo fails under all three theories for one fundamental reason: there is no showing that Wells Fargo breached a contract. Under the first two theories, in 2011 and 2015, respectively, Wells Fargo allegedly agreed to modify the loan without authority or title, but Ms. Titus' briefing does not direct the Court to where in the record such a contract term can be found. Nor would it matter, because as discussed above, Wells Fargo, since January 2008, is the holder of the Promissory Note and is thus entitled to enforce its security interest.

The final theory, "breach of the mediation agreement," is not cogently advanced in the briefing, *see* Dkt. 73 at 11, 12, but presumably it concerns Wells Fargo's conduct at the two foreclosure mediation sessions, in July of 2015 and September of 2015. *See* Dkt. 70-13 at 2, 3. The second theory, which concerns Wells Fargo's supposed refusal to hand over net present value calculations, also relates to the parties' conduct at the mediations. Presumably the "mediation agreement" that Ms. Titus is referring to—although not cited to in the briefing—is the Agreement to Participate in Foreclosure Mediation. Dkt. 74-3 at 2. This document "sets out the understandings of the parties and the mediator" for the foreclosure mediation sessions, but Ms. Titus does not direct the Court to terms of that agreement that would give rise to a claim for breach of contract. Nor is it readily observable that Wells Fargo violated any binding terms. The agreement uses binding language for some terms, giving the mediator immunity from civil liability and requiring the parties to maintain confidentiality. Elsewhere the agreement uses non-binding language, for example, when stating that parties "<u>should</u>: . . . actively present, discuss, and explore options; negotiate willingly; and cooperatively; maintain a professional and cooperative demeanor. . ." *Id*. (emphasis added).

1     Beyond the mediation agreement, the Court is hard-pressed to find any other basis to support a claim for breach of contract. At most, the record shows that the parties engaged in mediation that reached an impasse, which does not give rise to a claim for breach of contract.

    Ms. Titus has not made a showing of issues of material fact as to any of the three contract theories advanced. Wells Fargo's motion for summary judgment of dismissal should be granted and the breach of contract claim dismissed.

* * *

    THEREFORE, Wells Fargo, Fannie Mae, and MERS' Motion for Summary Judgment (Dkt. 66) is DENIED IN PART and GRANTED IN PART as follows:

- As to Fannie Mae and MERS, the motion is DENIED AS MOOT, because all claims against Fannie Mae and MERS were previously dismissed. *See* Dkt. 47 at 16. Fannie Mae and MERS are dismissed from the case.
- As to Wells Fargo, the motion is GRANTED as to the three remaining claims. Wells Fargo is dismissed from the case.

    The Joint Motion for Summary Judgment of Defendants Northwest Trustee and RCO Legal (Dkt. 69) is GRANTED. The FDCPA claim (Count 1) is dismissed against both defendants. Northwest Trustee and RCO Legal are dismissed from the case.

    There being no more pending claims, this case should be closed.

    IT IS SO ORDERED.

    The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

1  Dated this 6th day of June, 2017.

2  *Robert J. Bryan* (signature)

3  ROBERT J. BRYAN
   United States District Judge